Andrew P. Saulitis
LAW OFFICES OF
ANDREW P. SAULITIS P.C.
*Attorneys for Plaintiff*
  Canova Law Office LLC
40 Wall Street-37th Floor
New York, New York 10005
(212) 459-0900
apslaw@msn.com

UNITED STATES DISTRICT COURT
for the
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

**CANOVA LAW OFFICE LLC,**

                            Plaintiff,

      —against—                                                             22-cv- 7125

**THE LAW OFFICE OF RONALD A.
MARRON, APLC,**

                            Defendant.

-------------------------------------------------------------------x

**COMPLAINT**

      Plaintiff, the Canova Law Office LLC (the "Canova Firm"), by its attorneys the Law Offices of Andrew P. Saulitis P.C., for its complaint against defendant, The Law Office of Ronald A. Marron, APLC (the "Marron Firm"), states as follows, which statements are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. The claims are stated alternatively, including relief in the alternative or for different types of relief.

**Nature of Action**

      1.      This is an action by the Canova Firm to recover its agreed share of legal

fees collected by the Marron Firm (as lead counsel), in a court-approved consumer false advertising class action settlement, which fees the Marron Firm has wrongfully retained despite a written fee-sharing agreement with the Canova Firm. The Canova Firm's share of those fees is due whether pursuant to the parties' agreement; for money had and received/unjust enrichment; for conversion; or for the reasonable value of the Canova Firm's legal services for the benefit of the Marron Firm and their mutual clients. In a word, the Marron Firm has cheated the Canova Firm out of fees justly earned and payable, sadly, necessitating this action.

**Parties, Jurisdiction and Venue**

2.   The Canova Firm is a professional service limited liability company created under the laws of the State of New York having its principal place of business in the State of New York, engaged in the practice of law, the sole member and manager of which is Thomas A. Canova, an attorney admitted to practice in the State of New York ([N.Y. Reg. No. 2108199](#)) for the past 35 years, domiciled in the State of New York. As such, the Canova Firm is a citizen of the State of New York.

3.   The Canova Firm through its sole member worked for years on consumer false advertising class action litigation with the Marron Firm, involving a dietary supplement called "CoQ-10", which litigation was ultimately settled with court approval and for which substantial attorneys' fees were sought by and awarded and paid to the Marron Firm, retained by it without paying the Canova Firm any of its rightful share.

4.   The Marron Firm is a professional limited liability company created under the laws of the State of California, engaged in the practice of law in California and elsewhere, having its principal place of business at 651 Arroyo Drive, San Diego,

California 92103-6401, the sole member and manager of which is Ronald A. Marron, an attorney admitted to practice in the State of California (Cal. SBN 175650) who is domiciled in the State of California. As such, the Marron Firm is a citizen of the State of California. The Marron Firm holds itself out as "[o]ne of San Diego's premier litigation firms dedicated to protecting the rights of consumers and investors."

5. Subject matter jurisdiction is founded on diversity of citizenship and amount in controversy pursuant to 28 U.S.C. § 1332(a)(1); the Canova Firm being a citizen of New York and the Marron Firm being a citizen of California and the matter in controversy exceeding the sum or value of $75,000, exclusive of interest and costs.

6. Personal jurisdiction over the Marron Firm is based on its regular presence and doing business in the State of New York pursuant to N.Y. Civ. Prac. L. & R. § 301, including without limitation having been regularly involved as attorneys of record in at least ten actions in the State of New York, in three federal district courts located there. The Marron Firm asserts that it is "frequently be appointed as lead class counsel in consumer class action and complex litigation cases in various jurisdictions," including, for example, *Lucero et al. v. Tommie Copper Inc. et al.*, No. 1:15-cv-06055-AT-LMS (S.D.N.Y. filed July 31, 2015).

7. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 (b)(1) and (c)(2) (as a district in which the Marron Firm "resides," *i.e.*, in which it is subject to the court's personal jurisdiction); (b)(2) (as a district in which a substantial part of the events giving rise to the claim occurred); and/or (b)(3) (otherwise, as a district in which the Marron Firm is subject to the court's personal jurisdiction).

## FIRST CLAIM
## [BREACH OF FEE SHARING AGREEMENT]

**The Underlying Class Action Litigation**

8. Starting in 2013, Thamar Santisteban Cortina ("Ms. Cortina") was a plaintiff-class representative in nationwide consumer false advertising class action litigation based in California entitled *Cortina etc. v. Wal-Mart Stores, Inc. et al.*, No. 3:13-cv-02054-BAS-DHB (U.S.D.C.-S.D. Cal. filed Sept. 3, 2013 dismissed without prejudice Sept. 20, 2017) (the *Cortina* Case"), involving a dietary supplement called "CoQ-10"[1] that the plaintiff-representative alleged was misleadingly labeled, branded and advertised.[2] [3]

**The Engagement Letter Agreement Providing for Fee Splitting**

9. In connection with the CoQ-10 Litigation, the Marron Firm and the

---

[1] This refers to a vitamin-like, antioxidant nutrient known as "Coenzyme Q-10," more formally referred to as "ubiquinone," "ubidecarenone," or "ubiquinol" (depending upon its form,) which is a main ingredient in various over-the-counter supplements sold nationwide.

[2] The *Cortina* Case was the first of several CoQ-10 consumer class action cases filed in federal and state courts, where the parties engaged in extensive discovery, including written discovery and depositions, and substantial contentious motion practice, culminating in *Jackson et al. v. Lang Pharma Nutrition, Inc. et al.*, No. 37-2017-00028196-CU-BC-CT (Cal. Super. Ct., San Diego Cnty. filed Aug. 1, 2017) (the "CoQ-10 Litigation") or the "*Jackson* Case") which certain plaintiff-representatives, including Ms. Cortina resolved through settlement.

[3] The plaintiff-representatives alleged that the defendants' advertising, branding and sale of various CoQ-10 products violated the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*, the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 *et seq.*, the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq., Cal. Civ. Code § 1770(a)(2), (3), (5), (6), (7), (8), (9) & (16), the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2103 *et seq.*, the Lanham Act, 15 U.S.C. §§ 1501 *et seq.*, and the Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and breached express and implied warranties.

Canova Firm entered into a written "Engagement Letter" agreement dated September 3, 2017 with Ms. Cortina, under which the Marron Firm, the Canova Firm, and Ms. Cortina as putative class representative specifically agreed that the Marron Firm and the Canova Firm split equally any and all fees and costs awarded in the CoQ-10 Litigation, in which the Marron Firm would enter a formal appearance as counsel of record for the plaintiff-representatives.

10. The Engagement Letter was in conformity with the California Rules of Professional Conduct and Rules [2-200(A)][4] and [4-200] thereof and was otherwise lawful.[5]

11. The consideration for the Engagement Letter was legal services performed and to be performed by the Canova Firm in connection with the CoQ-10 Litigation and for the Marron Firm, and the amount was in proportion to the value of the services performed.

12. As to the agreed fee-splitting, the Engagement Letter provides, in pertinent

---

[4]Rule 2-200 of the California Rules of Professional Conduct (Financial Arrangements Among Lawyers) provides:

> (A) A member shall not divide a fee for legal services with a lawyer who is not a partner of, associate of, or shareholder with the member unless:
>
> (1) The client has consented in writing thereto after a full disclosure has been made in writing that a division of fees will be made and the terms of such division; and
>
> (2) The total fee charged by all lawyers is not increased solely by reason of the provision for division of fees and is not unconscionable as that term is defined in rule 4-200.

[5]Full disclosure of such division of fees and the terms of such division was also made to and consented to by the co-plaintiff representatives (William Jackson and Edward Buchannan) in the *Jackson* Case (on September 11 and 12, 2017, respectively).

part, that "[t]he amount of attorneys' fees in class actions, if any, is determined by the judge assigned to the case," that "[u]nder no circumstances will [Ms. Cortina] be liable to us for any of our attorneys' fees or costs for our representation of the class" and that "[t]he Firms [the Marron Firm and the Canova Firm] have agreed to split any and all fees and costs awarded in these matters, including any such fees and costs that may be based on our prior CoQ-10 litigation in which you were the named plaintiff against Wal-Mart and Lang [referring to the *Cortina* Case], equally: 50% to [the Marron Firm] and 50% to [the Canova Firm]."

13. The Engagement Letter was never cancelled or modified and remained in effect throughout the *Jackson* Case, and was relied upon by the Canova Firm.

**Settlement of the Class Action Litigation and Fee Award**

14. Ultimately, in the *Jackson* Case, all claims were settled and successfully resolved under a Final Order and Judgment Approving Class Action Settlement entered December 20, 2018 (the "Final Order").

15. By the Final Order, "[t]he Court approve[d] the attorney fee and expense payment sought by Class Counsel [the Marron Firm] and . . . award[ed] $435,289.80 in attorneys' fees"[6] plus "$39,031.51 in costs that were reasonably necessary to prosecute the Action." Final Order ¶ 11. The award, totaling $474,321.31, was for the full amount sought by the Marron Firm, in consultation with the Canova Firm.

16. The Final Order was not appealed from, the time in which to do so

---

[6]Attorneys' fees were awarded pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, and the Private Attorney General Statute, Cal. Civ. Proc. Code § 1021.5, to be funded by defendants. This was done upon application of the Marron Firm as Class Counsel.

expired, and has not been modified, vacated or otherwise altered.

17. Upon information and belief, by mid-2019, the Class Action Administrator in the *Jackson* Case disbursed $474,321.31 to the Marron Firm representing 100% of the attorneys' fees and costs awarded by the Final Order, which funds the Marron Firm received and kept.

**The Marron Firm's Failure to Remit the Canova Firm's Agreed 50% Share**

18. However, the Marron Firm has failed and refused to remit 50% of the attorneys' fees and costs it had received to the Canova Firm as its agreed-upon share (totaling $237,160.66), or any part thereof.

19. The Canova Firm performed substantial services in connection with the CoQ-10 Litigation over a four-year period and performed its material obligations under the Engagement Letter.

20. Any and all conditions precedent have occurred or have been performed, and the Canova Firm has duly performed all of its material obligations under the Engagement Letter.

21. By reason its non-payment, the Marron Firm has breached its obligations under the Engagement Letter to the Canova Firm.

22. By reason of the Marron Firm's breach of the Engagement Letter, the Canova Firm has been damaged in the amount of at least $237,160.66. Interest at the rate of [10% thereon under California substantive law](#) (or at the rate of [9% per annum under New York substantive law](#)) accrues from the date the Marron Firm received the fees and costs from the Class Action Administrator.

## SECOND CLAIM
## [MONEY HAD AND RECEIVED/UNJUST ENRICHMENT]

23. Regardless of the Engagement Letter, the Marron Firm is indebted to the Canova Firm in a sum certain, to wit, $237,160.66 plus interest, the consideration for which was the performance of legal services for the benefit of the plaintiffs and the Marron Firm in connection with the CoQ-10 Litigation, no part of which has been paid.

24. The Marron Firm has been unjustly enriched by its receipt and retention of such sum, to which the Canova Firm is justly entitled, intended for its benefit, resulting in the Marron Firm being overcompensated at the expense of the Canova Firm.

25. It is inequitable and unjust for the Marron Firm to keep funds rightfully earned by and belonging to the Canova Firm.

26. By reason of money had and received and unjust enrichment, the Canova Firm is entitled to restitution of $237,160.66 plus interest and the imposition of a constructive trust upon such money, and the Marron Firm being deemed an involuntary trustee thereof.

## THIRD CLAIM
## [CONVERSION]

27. The Canova Firm's 50% share ($237,160.66) of the attorneys' fees and costs awarded in the CoQ-10 Litigation, plus interest, was and is a specific, identifiable sum.

28. Said sum was and remains the rightful property of the Canova Firm, to which the Canova Firm had the right to possession from the time it was disbursed by the Class Action Administrator in the *Jackson* Case and received by the Marron Firm.

29. The Canova Firm's right to said money once in the hands of the Marron

Firm (as a constructive/involuntary trustee) existed independent of any contract. The Marron Firm had no contractual or other right to retain such money.

30. Instead, the Marron Firm exercised dominion over and converted said sum by a wrongful act by retaining said sum for its own possession, control and use.

31. The Canova Firm has been damaged by the Marron Firm's conversion of said sum ($237,160.66) as actual damages.

32. Though such demand was not necessary, the Canova Firm has duly demanded the payment over to it of said sum, which the Marron Firm has refused, instead making false and contrived pretense excuses for its not doing so, but never contesting the Canova Firm's right to such money.

33. Under California Civil Code § 3336,[7] the Canova Firm is entitled to the value of the property at the time of the Marron Firm's conversion ($237,160.66), with the interest from that time, or in an amount sufficient to indemnify the Canova Firm for the loss which is the natural, reasonable and proximate result of the conversion and a fair compensation for the time and money properly expended in pursuit of the property converted.

---

[7] Cal. Civ. Code § 3336 provides: The detriment caused by the wrongful conversion of personal property is presumed to be:

First--The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and

Second--A fair compensation for the time and money properly expended in pursuit of the property.

34. In its wrongful retention of funds belonging to the Canova Firm, and its refusal to turn them over, the Marron Firm has been guilty of oppression and/or or malice.

35. The Marron Firm's conduct was and is intended by it to cause injury to the Canova Firm and is despicable conduct carried on with a willful and conscious disregard of the rights of the Canova Firm.

36. The Marron Firm's conduct has subjected the Canova Firm to cruel and unjust hardship in conscious disregard of its rights.

37. The Marron Firm's conduct in converting property justly belonging to the Canova Firm is reprehensible, particularly as it has been done by attorneys charged with fiduciary responsibility over property belonging to others and their knowledge that such conduct is wrongful.

38. The Marron Firm's conduct in converting the property of the Canova Firm was and is such that in addition to recovery of actual damages, it warrants recovery of damages for the sake of example and by way of punishing the Marron Firm, pursuant to California Civil Code § 3294, which are sought in this action.

39. Punitive damages are sought in the sum of at least three times the amount of the actual damages sought, to the full extent permitted by the U.S. Constitution and any applicable State constitution.

### FOURTH CLAIM
### [*QUANTUM MERUIT*]

40. The Canova Firm performed certain legal services with the Marron Firm in connection with the CoQ-10 Litigation.

41. The reasonable value of the services of the Canova Firm can be

determined.

42. The Canova Firm's legal services were rendered at the Marron Firm's request and were accepted by the Marron Firm, for its benefit and that of the plaintiffs in the CoQ-10 Litigation.

43. The Canova Firm's legal services are unpaid.

44. By reason of the foregoing, the Canova Firm is entitled to recover the reasonable value of its legal services in the sum or value in an amount to be determined at trial, inquest or fee application.

**Demand for Relief Sought:**  Plaintiff the Canova Law Office LLC demands judgment, including relief in the alternative or different types of relief, against defendant the Law Office of Ronald A. Marron APLC, as follows: On the first claim, judgment for the liquidated principal sum of $237,160.66, plus interest thereon at the applicable legal rate; on the second claim judgment and decree directing restitution of $237,160.66 plus interest thereon at the applicable legal rate by defendant and the imposition of a constructive trust upon such money, and the defendant being deemed an involuntary trustee thereof; on the third claim, judgment for actual damages of $237,160.66, plus interest at the applicable legal rate, or in an amount sufficient to indemnify the plaintiff for the loss which is the natural, reasonable and proximate result of the conversion and a fair compensation for the time and money properly expended in pursuit of the property converted, plus punitive/exemplary damages of at least thrice actual damages; on the fourth claim judgment for the reasonable value of plaintiff's legal services in amounts to be determined by trial, inquest or fee application; and on all claims reasonable attorneys' fees to the extent permitted by law and for any statutory and regulatory penalties,

additional damages and costs as may be applicable by law, and such other and further relief as may be just.

Dated: August 19, 2022

                                                         /s/ Andrew P. Saulitis
                                                            Andrew P. Saulitis

                        LAW OFFICES OF
                    ANDREW P. SAULITIS P.C.
                    *Attorneys for Plaintiff*
                      *Canova Law Office LLC*
                    40 Wall Street-37th Floor
                    New York, New York 10005
                    (212) 459-0900
                    Fax (212) 459-1826
                    apslaw@msn.com