**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CANOVA LAW OFFICE LLC, | Case No. 1:22-cv-07125-JPO |
| Plaintiff, | |
| v. | |
| THE LAW OFFICE OF RONALD A. MARRON, APLC, | |
| Defendant. | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LAW OFFICES OF RONALD A. MARRON, APLC's MOTION TO DISMISS COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

---

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 3

   A.   The Marron Firm Files the *Jackson* Litigation ................................................ 3

   B.   The Marron Firm and Canova Sign an Agreement for the Joint Prosecution of the

   *Jackson* Litigation ................................................................................................ 3

   C.   Canova Breaches the Agreement by Failing to Appear as Counsel for the *Jackson*

   Plaintiffs .............................................................................................................. 4

   D.   The *Jackson* Litigation Settles on a Classwide Basis, but Canova Fails to Submit any

   Time Records in Support of the Attorneys' Fee Application ...................................... 5

   E.    Canova Files This Action Almost Four Years After the *Jackson* Court Approved the

   Settlement ............................................................................................................ 6

III.   THE COURT SHOULD DISMISS THIS ACTION FOR LACK OF PERSONAL

JURISDICTION ....................................................................................................... 6

   A.   Rule 12(b)(2) Legal Standard ......................................................................... 6

   B.   The Court Lacks General Personal Jurisdiction .................................................. 7

   C.   The Court Lacks Specific Personal Jurisdiction .................................................. 9

      1.   *The Marron Firm Does Not Have an Ongoing Contractual Relationship  with*

      *Canova* ............................................................................................................. 10

      2.   *The Agreement Was Not Negotiated In New York* ...................................... 10

      3.   *The Agreement Was Not to Be Performed in New York* .............................. 11

      4.   *No Notices or Payments Were Required to be Sent to New York* ............... 11

      5.   *The Agreement Does Not Contain a New York Choice of Law Clause* ..................... 12

i

IV.   THE COURT SHOULD DISMISS THIS ACTION BECAUSE VENUE IS IMPROPER 12

    A.   Rule 12(b)(3) Legal Standard ....................................................... 12

    B.   The Southern District of New York Is Not a Proper Venue for this Action.................. 13

V.   ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS ACTION TO THE

SOUTHERN DISTRICT OF CALIFORNIA ............................................ 14

    A.   28 U.S.C. § 1404(a) Legal Standard ............................................ 14

    B.   Transfer Is Appropriate Because the Court Lacks Personal Jurisdiction and Venue Is

Improper ................................................................................. 15

    C.   The Parties' Forum Selection Agreement Requires Transfer ....................... 16

VI.   THE COMPLAINT FAILS TO STATE A CLAIM AS A MATTER OF LAW ............... 18

    A.   Rule 12(b)(6) Legal Standard ...................................................... 18

    B.   Canova's Failure to Disclose the Fee Split Agreement to the *Jackson* Court Bars His

Claims.................................................................................... 19

    C.   Canova's Claims Are Barred by *Res Judicata*.................................. 20

    D.   Canova's Unjust Enrichment and Quantum Merit Claims Fail Because Canova Alleges

that an Express Contract Exists .................................................... 21

    E.   Canova's Conversion Claim Is Barred by the Economic Loss Doctrine ............ 22

    F.   Canova's Claims Are Also Barred by the Statute of Limitations .................. 23

VII.   CONCLUSION .......................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
    98 F.3d 25 (2d Cir. 1996) ................................................................................ 10

*Al -Ahmed v. Twitter, Inc.*,
    553 F. Supp. 3d 118 (S.D.N.Y. 2021) .............................................................. 8

*Allen v. WestPoint-Pepperell, Inc.*,
    945 F.2d 40 (2d Cir. 1991) .............................................................................. 19

*AmerUS Life Ins. Co. v. Bank of America, N.A.*,
    143 Cal.App.4th 631 (2006) ............................................................................ 23

*Ansari v. Qwest Comm'ns Corp.*,
    414 F.3d 1214 (10th Cir. 2005) ....................................................................... 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................... 19

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
    571 U.S. 49  (2013) ...................................................................................... 2, 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... 18

*Berger v. Cushman & Wakefield of Penn., Inc.*,
    2013 WL 456256 (S.D.N.Y. Aug. 28, 2013) .................................................. 14

*B-K Lighting, Inc. v. Fresno Valves & Casting*,
    2008 WL 11338299 (C.D. Cal. Jan. 7, 2008) ................................................. 23

*BNSF Ry. Co. v. Tyrrell*,
    137 S. Ct. 1549 (2017) ..................................................................................... 8

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ......................................................................................... 2

*C.B.C. Wood Prod., Inc. v. LMD Integrated Logistics Servs., Inc.*,
    455 F. Supp. 2d 218 (E.D.N.Y. 2006) .......................................................................... 9

*Cable Grp., Inc. v. Discovery Commc'ns, LLC*,
    2020 WL 10759618 (C.D. Cal. May 15, 2020) .......................................................... 22

*Caliko, SA v. Finn & Emma, LLC*,
    2022 WL 596072 (S.D.N.Y. Feb. 28, 2022) .............................................................. 13

*Cavit Cantina Viticoltori Consorzio Cantine Sociali Del Trentino Societa' Cooperativa v.*
    *Browman Fam. Vineyards, Inc.*, 656 F. Supp. 2d 421 (S.D.N.Y. 2009).................................... 16

*Connecticut Gen. Life Ins. Co. v. Earl Scheib, Inc.*,
    2012 WL 12868358 (S.D. Cal. May 22, 2012) .......................................................... 21

*Crockrom v. Bank of Am., N.A.*,
    2020 WL 6747034 (S.D.N.Y. Nov. 17, 2020) ............................................................ 7

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ............................................................................................ 7, 8

*Daniel v. Am. Bd. of Emergency Medicine*,
    428 F.3d 408 (2d Cir. 2005) .................................................................................. 13

*Del Toro v. Novus Equities, LLC*,
    2021 WL 5567618 (S.D.N.Y. Nov. 29, 2021) ............................................................ 7

*Dhaliwal v. Singh*,
    2013 WL 2664336 (E.D. Cal. 2013) ........................................................................ 23

*Doe v. McAdam Fin. Grp. LLC*,
    2022 WL 3579700 (S.D.N.Y. Aug. 3, 2022) .............................................................. 13

*DPR Constr. v. Shire Regenerative Med., Inc.*,
    204 F. Supp. 3d 1118 (S.D. Cal. 2016) .................................................................... 22

*Erlich v. Menezes*,
   21 Cal. 4th 543 (1999) ................................................................................................. 22

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*,
   928 F. Supp. 2d 735 (S.D.N.Y. 2013) .......................................................................... 16

*Fedele v. Harris*,
   18 F. Supp. 3d 309 (E.D.N.Y. 2014) ............................................................................ 14

*Federal Deposit Ins. Corp. v. Dintino*,
   167 Cal. App. 4th 333 (2008) ....................................................................................... 23

*Fernando v. Fernando*,
   2010 WL 3119729 (E.D.N.Y. Aug. 05, 2010) ............................................................. 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ........................................................................................................ 8

*Goonan v. Fed. Rsrv. Bank of N.Y.*,
   916 F. Supp. 2d 470 (S.D.N.Y. 2013) .......................................................................... 19

*Grand v. Schwarz*,
   2016 WL 2733133 (S.D.N.Y. May 10, 2016) ................................................................ 9

*Harris v. TD Ameritrade Clearing Inc.*,
   2022 WL 3544171 (S.D.N.Y. Aug. 18, 2022) .............................................................. 19

*In re Lifetrade Litig.*,
   2021 WL 1178087 (S.D.N.Y. Mar. 29, 2021) ................................................................ 6

*In re Petrobras Sec. Litig.*,
   393 F. Supp. 3d 376 (S.D.N.Y. 2019) ............................................................................ 7

*Jonas v. Est. of Leven*,
   116 F. Supp. 3d 314 (S.D.N.Y. 2015) ............................................................................ 7

*Kraljevich v. Courser Athletics, Inc.*,
   2022 WL 3597760 (S.D.N.Y. Aug. 23, 2022) .............................................................. 17

*Lear v. Royal Caribbean Cruises Ltd.*,
   2021 WL 1299489 (S.D.N.Y. Apr. 7, 2021) ............................................................. 11

*Lehigh Valley Indus., Inc. v. Birenhaum*,
   527 F.2d 87 (2d Cir. 1975) .................................................................................... 11

*Lehrer v. J&M Monitoring, Inc.*,
   2022 WL 2392441 (S.D.N.Y. July 1, 2022) .......................................................... 14

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013) .................................................................................... 9

*Lorenzo v. Qualcomm Inc.*,
   603 F. Supp. 2d 1291 (S.D. Cal. 2009) ................................................................. 21

*Los Angeles Turf Club, Inc. v. Cushion Track Footing USA, LLC*,
   2009 WL 10670623 (C.D. Cal. Feb. 11, 2009) ...................................................... 22

*MacDermid, Inc. v. Deiter*,
   702 F.3d 725 (2d Cir. 2012) .................................................................................... 7

*Magi XXI, Inc. v. Stato della Citta del Vaticano*,
   714 F.3d 714 (2d Cir. 2013) .................................................................................. 17

*Maglica v. Maglica*,
   66 Cal.App.4th 442 (1998) ................................................................................... 23

*Mapfre Peru Compania de Seguros y Reaseguros S.A. v. M/V AS FORTUNA*,
   2022 WL 976827 (S.D.N.Y. Mar. 31, 2022) ............................................................ 8

*Marcus v. Archer*,
   2020 WL 4937353 (S.D.N.Y. Aug. 24, 2020) ......................................................... 7

*Mark v. Spencer*,
   166 Cal. App. 4th 219 (2008) ............................................................................ 2, 20

*Martinez v. Capstone Rest. Grp., LLC,*
   2021 WL 1723776 (D. Colo. Mar. 31, 2021) ......................................................... 17

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer,*
   49 F.3d 323 (7th Cir. 1995) ................................................................................... 17

*Meyer v. Aabaco Small Bus., LLC,*
   2018 WL 306688 (N.D. Cal. Jan. 5, 2018) ........................................................... 22

*Mortg. Funding Corp. v. Boyer Lake Pointe, LC,*
   379 F.Supp.2d 282 (E.D.N.Y.2005) ....................................................................... 10

*Navaera Sci., LLC v. Acuity Forensic Inc.,*
   667 F. Supp. 2d 369 (S.D.N.Y. 2009) ................................................................... 11

*O'M & Assocs., LLC v. Ozanne,*
   2011 WL 4433645 (S.D. Cal. Sept. 21, 2011) ................................................. 22, 23

*Pedersen v. Greenpoint Mortg. Funding, Inc.,*
   900 F. Supp. 2d 1071 (E.D. Cal. 2012) ................................................................. 23

*Penguin Gr. (USA) Inc. v. Am. Buddha,*
   609 F.3d 30 (2d Cir. 2010) ....................................................................................... 7

*Rebney v. Wells Fargo Bank,*
   220 Cal. App. 3d 1117 (Ct. App. 1990) ................................................................ 20

*Robertson v. Cartinhour,*
   2011 WL 5175597 (S.D.N.Y. Oct. 28, 2011) ........................................................ 15

*Robinson Helicopter Co. v. Dana Corp.,*
   34 Cal. 4th 979 (2004) ........................................................................................... 22

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.,*
   75 F.3d 801 (2d Cir. 1996) ..................................................................................... 19

*Sec. & Exch. Comm'n v. Am. Renal Assoc. Holdings*,
   2022 WL 1166087 (S.D.N.Y. Apr. 20, 2022) ........................................ 14

*SG Blocks, Inc. v. Hola Cmty. Partners*,
   521 F. Supp. 3d 881 (C.D. Cal. 2021) ........................................ 23

*Shenzhen OKT Lighting Co. v. JLC-Tech LLC*,
   2021 WL 4443637 (S.D.N.Y. Sept. 28, 2021) ........................................ 8

*Siegel v. Ford*,
   2017 WL 4119654 (S.D.N.Y. Sept. 15, 2017) ........................................ 14

*Sky Cable, LLC v. Coley*,
   2012 WL 1016112 (W.D. Va. Mar. 23, 2012) ........................................ 17

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
   450 F.3d 100 (2d Cir. 2006) ........................................ 9

*Sullivan v. Transamerica Life INS. Co.*,
   2021 WL 2000301 (C.D. Cal. May 17, 2021) ........................................ 23

*Tait v. BSH Home Appliances Corp.*,
   2011 WL 1832941 (C.D. Cal. May 12, 2011) ........................................ 21

*Textainer Equip. Mgmt. (U.S.) Ltd. v. TRS Inc.*,
   2007 WL 1795695 (N.D.Cal.2007) ........................................ 22

*Todorovic v. Liquid Labs, Inc.*,
   2018 WL 2209506 (S.D.N.Y. May 14, 2018) ........................................ 15, 18

*Van Elzen v. Glob. Strategy Grp., LLC*,
   2021 WL 185328 (S.D.N.Y. Jan. 19, 2021) ........................................ 7

*Volk Corp. v. Art-Pak Clip Art Serv.*,
   432 F. Supp. 1179 (S.D.N.Y. 1977) ........................................ 16

*Wego Chem. & Min. Corp. v. Magnablend Inc.*,
　945 F. Supp. 2d 377 (E.D.N.Y. 2013) .................................................................. 11

*Worldwide Futgol Assoc., Inc. v. Event Entm't., Inc.*,
　983 F.Supp. 173 (E.D.N.Y.1997) ........................................................................ 11

*Zurich Am. Life Ins. Co. v. Nagel*,
　571 F. Supp. 3d 168 (S.D.N.Y. 2021) .................................................................... 9

## <u>Statutes</u>

28 U.S.C. § 1391(b) ..................................................................................... 12, 15

28 U.S.C. § 1391(b)(1) ....................................................................................... 13

28 U.S.C. § 1391(b)(2) ....................................................................................... 13

28 U.S.C. § 1391(b)(3) ....................................................................................... 14

28 U.S.C. § 1391(c)(2) ....................................................................................... 13

28 U.S.C. § 1404(a) ..................................................................................... 14, 15

Cal. Civ. Proc. Code § 338(d) ............................................................................ 23

Cal. Code Civ. Proc. § 339(1) ............................................................................ 23

CPLR § 301 ......................................................................................................... 9

CPLR § 302 ......................................................................................................... 9

## <u>Rules</u>

California Rules of Court, Rule 3.769(b) ............................................................ 19

Fed. R. Civ. P. 12(b)(2) .................................................................................. 6, 15

Fed. R. Civ. P. 12(b)(3) ................................................................................ 12, 15

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 18

## I.    **INTRODUCTION**

Plaintiff Canova Law Office, LLC ("Canova") alleges that Defendant The Law Offices of Ronald A. Marron, APLC (the "Marron Firm," together with Canova, the "Parties") breached a fee sharing agreement entered into in connection with the prosecution of a consumer class action lawsuit that was filed in the California Superior Court for the County of San Diego titled *William Jackson, et al. v. Lang Pharma Nutrition, Inc., et al.*, Case No. 37-2017-00028196-CU-BC-CTL (Cal. Super. Ct., San Diego Cnty.) (the "*Jackson* Litigation"). *See generally* Complaint, ECF No. 1 ("Compl."). Sadly, however, it was Canova who breached his agreement with the Marron Firm.

On September 7, 2017, the Parties signed a written "Joint Prosecution and Confidentiality Agreement" (the "Agreement") for purposes of "jointly prosecuting" the *Jackson* Litigation. *See* Declaration of Ronald A. Marron in Support of Defendant's Motion to Dismiss filed concurrently herewith ("Marron Decl."), ¶ 7 & Ex. 3. The Agreement provides that "[t]he Parties jointly shall explore, develop, *and prosecute* (in their joint discretion) the [*Jackson*] Litigation." Marron Decl., ¶ 7 & Ex. 3 [Agreement at ¶ 5] (emphasis added). Canova does not attach the Agreement to the Complaint and misleads the Court by alleging that a purported "Engagement Letter" is the operative contract.

Unfortunately, Canova reneged on his promise to jointly prosecute the *Jackson* Litigation with the Marron Firm. Canova never appeared as counsel for the plaintiffs. And, after the *Jackson* Litigation settled on a classwide basis, Canova never submitted any time records for the court's consideration of an attorneys' fee award. Subsequently, the *Jackson* court appointed the Marron Firm as class counsel and awarded the Marron Firm $435,289.80 in attorneys' fees for its successful prosecution of the *Jackson* Litigation based on time records that were submitted solely by the Marron Firm.

Canova's failure to appear in the *Jackson* Litigation as counsel for the plaintiffs and his failure to submit time records for the *Jackson* court's consideration of awarding attorneys' fees are fatal to

Canova's claims in this action. Specifically, by failing to appear as counsel in the *Jackson* Litigation, Canova never disclosed the terms of the fee split agreement to the *Jackson* court. This Court need look no further than the case of *Mark v. Spencer*, 166 Cal. App. 4th 219 (2008) to see that Canova's claims are utterly meritless. The *Mark* court unequivocally held that a party's failure to disclose the terms of a fee split agreement to a California Superior Court bars a future action for breach of the fee split agreement. *See Mark*, 166 Cal. App. 4th at 228. Additionally, Canova's claims are barred by the doctrine of *res judicata* because Canova is essentially seeking to relitigate the *Jackson* court's allocation of attorneys' fees. *Id.* at 230.

However, this Court need not reach the merits of Canova's claims because this action must be dismissed for lack of personal jurisdiction. As alleged by Canova, the Marron Firm is a California law firm that maintains its principal place of business in San Diego, California. Compl., ¶ 4. This action arises from the purported breach of a fee split agreement that concerned litigation that was conducted in San Diego, California. The Agreement was signed by the Marron Firm in California and was to be performed in California. As explained below, this action lacks the "minimum contacts" necessary for personal jurisdiction to be established. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

Alternatively, this Court should transfer this action to the United States District Court for the Southern District of California. The Agreement between the parties contains a forum selection clause whereby an action to enforce the Agreement "shall be brought and conducted in San Diego, California." Marron Decl., ¶ 7 & Ex. 3 [Agreement at ¶ 16]; *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59 (2013) (a forum selection clause "may be enforced through a motion to transfer under § 1404(a)").

Accordingly, the Court should grant the Marron Firm's Motion to Dismiss or, alternatively, transfer this action to the United States District Court for the Southern District of California.

## II.  BACKGROUND

### A.  The Marron Firm Files the *Jackson* Litigation

On August 1, 2017, the Marron Firm filed the *Jackson* Litigation on behalf of plaintiffs William Jackson and Edward Buchannan. Marron Decl., ¶ 5 & Ex. 1. *Jackson* was a putative class action lawsuit where the plaintiffs alleged that certain CoQ-10 dietary supplements were falsely advertised and mislabeled. *Id.* As alleged by Canova, the *Jackson* Litigation was a successor to prior class action lawsuits involving similar false advertising claims concerning CoQ-10 dietary supplements. Compl., ¶ 8 & fn. 2.  One such prior case was *Cortina v. Wal-Mart, Inc.*, 3:13-cv-02054-BAS-DHB (S.D. Cal.) (the "*Cortina* Action"), which was dismissed on September 20, 2016.[1] Marron Decl., ¶ 6 & Ex. 2. Canova never appeared as counsel for the plaintiff, Thamar Santisteban Cortina, in the *Cortina* Action. *Id.*

### B.  The Marron Firm and Canova Sign an Agreement for the Joint Prosecution of the *Jackson* Litigation

Canova alleges that "[i]n connection with the CoQ-10 Litigation, the Marron Firm and the Canova Firm entered into a written 'Engagement Letter' agreement dated September 3, 2017 with Ms. Cortina, under which the Marron Firm, the Canova Firm, and Ms. Cortina as putative class representative specifically agreed that the Marron Firm and the Canova Firm split equally any and all fees and costs awarded in the CoQ-10 Litigation." Compl., ¶ 9. Canova further alleges that "[t]he Engagement Letter was never cancelled or modified and remained in effect throughout the *Jackson* Case, and was relied upon by the Canova Firm." Compl., ¶ 13.

---

[1] Canova incorrectly asserts that the *Cortina* Action was dismissed without prejudice on September 20, 2017. Compl., ¶ 8. The *Cortina* Action was actually dismissed one year earlier on September 20, 2016. *See* Marron Decl., ¶ 6 & Ex. 2.

However, Canova's allegations are both incorrect and misleading. The purported "Engagement Letter" would have been modified by a written "Joint Prosecution and Confidentiality Agreement" that was subsequently signed by the Marron Firm and Canova on September 7, 2017. Marron Decl., ¶ 7 & Ex. 3. The Agreement specifically provides that it "supersedes any and all prior agreements between any Party, all of which are hereby made null and void." Marron Decl., ¶ 7 & Ex. 3 [Agreement at ¶ 12].[2] Pursuant to the terms of the Agreement, "[t]he Parties agree to support THE MARRON LAW FIRM and THE CANOVA LAW FIRM in an application to the court seeking to have them appointed as Interim Class and/or Class Counsel" Marron Decl., ¶ 7 & Ex. 3 [Agreement at ¶ 3]. The Agreement further provides that "[t]he Parties jointly shall explore, develop, *and prosecute* (in their joint discretion) the [*Jackson]* Litigation." Marron Decl., ¶ 7 & Ex. 3 [Agreement at ¶ 5] (emphasis added). As consideration for these joint prosecution efforts, the Agreement provides that "all fees awarded by the court or paid directly by Defendants shall be allocated 50% to THE CANOVA LAW FIRM and 50% to THE MARRON LAW FIRM." Marron Decl., ¶ 7 & Ex. 3 [Agreement at ¶ 14].

## C. Canova Breaches the Agreement by Failing to Appear as Counsel for the *Jackson* Plaintiffs

Despite the clear Agreement that Canova and the Marron Firm were to "jointly prosecute" the *Jackson* Litigation, Canova breached the Agreement by failing to appear as counsel for the *Jackson* Plaintiffs. A review of the *Jackson* court docket shows that at no time during the course of the litigation did Canova ever enter an appearance as counsel. Marron Decl., ¶ 9 & Ex. 4. On

---

[2] Canova misleads the Court by alleging that the September 3, 2017 "Engagement Letter" is the operative agreement between the Parties. The Engagement Letter was clearly superseded by the September 7, 2017 Agreement that was subsequently signed by the Parties. Canova acknowledges the existence of the September 7, 2017 Agreement (Compl., at fn. 5), but fails to attach the Agreement to the Complaint.

November 9, 2017, after signing the Agreement, the Marron Firm filed an amended complaint that added Ms. Cortina as a plaintiff and proposed class representative. Marron Decl., ¶ 10 & Ex. 5. Canova is not listed as counsel on the amended complaint nor did he bother to sign the amended complaint. *Id*. Put simply, Canova failed to jointly prosecute the *Jackson* Litigation despite his promise to do so.

### D. The *Jackson* Litigation Settles on a Classwide Basis, but Canova Fails to Submit any Time Records in Support of the Attorneys' Fee Application

The Parties in the *Jackson* Litigation eventually reached a classwide settlement. On May 17, 2018, the *Jackson* Plaintiffs filed a motion for preliminary approval of the settlement and attached the proposed settlement agreement for the *Jackson* court's review. Marron Decl., ¶ 11 & Ex. 6. Significantly, Canova never signed the preliminary approval motion nor did he sign the settlement agreement. Marron Decl., ¶ 11 & Ex. 6 at pp. 181 & 209-215. In fact, Canova is nowhere mentioned in the settlement agreement. Marron Decl., ¶ 11 & Ex. 6 at pp. 187-215.

On July 6, 2018, the *Jackson* court granted preliminary approval of the proposed settlement. Marron Decl., ¶ 12 & Ex. 7. Thereafter, the *Jackson* Plaintiffs filed a motion for attorneys' fees and a motion for final approval of the settlement. Marron Decl., ¶¶ 13-15 & Exs. 8-9. The plaintiffs' motion for attorneys' fees relied on time records that were submitted solely by the Marron Firm. Marron Decl., ¶ 14 & Ex. 8. Canova failed to submit any time records in support of the motion. *Id.* Moreover, Canova failed to disclose the fee split agreement to the *Jackson* court. Neither the fee motion nor the final approval motion ever mentions the fee split agreement. Marron Decl., ¶¶ 14-15 & Exs. 8-9.

On December 20, 2018, the *Jackson* court granted final approval of the settlement. Marron Decl., ¶ 16 & Ex. 10. With respect to attorneys' fees, the *Jackson* court awarded "Class Counsel"

$435,289.80 in attorneys' fees. Marron Decl., ¶ 16 & Ex. 10 [*Jackson* Final Approval Order at ¶ 11]. The final approval order made clear that "it incorporates by reference the definitions in the Settlement Agreement, and all terms used herein shall have the same meaning as that set forth in the Settlement Agreement." Marron Decl., ¶ 16 & Ex. 10 [*Jackson* Final Approval Order at ¶ 1]. The term "Class Counsel" is a defined term in the settlement agreement that means "Ronald A. Marron of the Law Offices of Ronald A. Marron, APLC." Marron Decl., ¶ 11 & Ex. 6 at p. 194 [*Jackson* Settlement Agreement at § II(A)(9)]. Accordingly, the *Jackson* court specifically awarded attorneys' fees to the Marron Firm and not Canova. Indeed, Canova failed to appear as counsel, failed to submit time records, and failed to disclose the fee split agreement.

### E.  Canova Files This Action Almost Four Years After the *Jackson* Court Approved the Settlement

Canova filed this action on August 22, 2022 (ECF No. 1)— approximately four years after the *Jackson* Litigation was resolved by the final approval order. Canova brings four claims for (1.) "breach of fee sharing agreement;" (2.) "money had and received/ unjust enrichment;" (3.) "conversion," and; (4.) "quantum meruit." *See generally* Compl.

## III.  <u>THE COURT SHOULD DISMISS THIS ACTION FOR LACK OF PERSONAL JURISDICTION</u>

### A.  Rule 12(b)(2) Legal Standard

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may file a motion to dismiss for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). "To survive a Rule 12(b)(2) motion to dismiss, a plaintiff 'bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit.'" *In re Lifetrade Litig.*, 2021 WL 1178087, at *2 (S.D.N.Y. Mar. 29, 2021) (quoting *Penguin Gr. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d

Cir. 2010)).  "[T]he district court may consider materials outside the pleadings, including affidavits and other written materials." *Jonas v. Est. of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015). "The court assumes the verity of the allegations 'to the extent they are uncontroverted by the defendant's affidavits.'" *Del Toro v. Novus Equities, LLC*, 2021 WL 5567618, at *2 (S.D.N.Y. Nov. 29, 2021) (quoting *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)).

"To adjudicate a claim, a court must have either 'general' or 'specific' personal jurisdiction over the defendant." *Van Elzen v. Glob. Strategy Grp., LLC*, 2021 WL 185328, at *2 (S.D.N.Y. Jan. 19, 2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014)). "In diversity cases, 'a federal court's personal jurisdiction is determined by the law of the state in which the district is located.'" *Marcus v. Archer*, 2020 WL 4937353, at *2 (S.D.N.Y. Aug. 24, 2020). "To demonstrate personal jurisdiction under New York law, a plaintiff must show 'either that [the defendant] was 'present' and 'doing business' in New York within the meaning of" New York Civil Practice Law & Rules ("CPLR") § 301, which governs general jurisdiction, 'or that [the defendant] committed acts within the scope of New York's long-arm statute,' CPLR § 302, which covers specific jurisdiction." *Id*.

### B.  The Court Lacks General Personal Jurisdiction

"A court has general jurisdiction over a corporation when the corporation is 'fairly regarded as at home' in the forum state, based on its incorporation or 'continuous and systematic' contacts in the state." *Crockrom v. Bank of Am., N.A.*, 2020 WL 6747034, at *2 (S.D.N.Y. Nov. 17, 2020). "A corporation is subject to the general personal jurisdiction of the courts in the states of its incorporation and its principal place of business." *In re Petrobras Sec. Litig.*, 393 F. Supp. 3d 376, 382 (S.D.N.Y. 2019) (citing *Daimler AG*, 571 U.S. at 137-38). "In an 'exceptional case,' a corporation could become subject to the personal jurisdiction of the courts in an additional state if

the corporation's contacts with that state are 'so continuous and systematic as to render [it] essentially at home[.]'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "But even extensive business contacts such as significant physical infrastructure and thousands of employees in a particular state do not constitute such an exceptional case." *Id.* (citing *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549 (2017)).

Here, there is no doubt that the Court lacks general personal jurisdiction over the Marron Firm. As alleged in the Complaint, the Marron Firm is a California law firm that maintains its principal place of business in San Diego, California. Compl., ¶ 4; Marron Decl., ¶ 3. The Marron Firm does not maintain an office in New York, it is not registered to do business in New York, and it has no employees who are located in New York. Marron Decl., ¶ 4. Canova does not allege otherwise and his complaint fails to establish general personal jurisdiction. *See Mapfre Peru Compania de Seguros y Reaseguros S.A. v. M/V AS FORTUNA*, 2022 WL 976827, at *3 (S.D.N.Y. Mar. 31, 2022). Although Canova alleges that the Marron Firm "has been regularly involved as attorneys of record in at least ten actions in the State of New York" (Compl., ¶ 6), this allegation is insufficient to support a finding of general personal jurisdiction. *Daimler AG*, 571 U.S. at 137-38; *Shenzhen OKT Lighting Co. v. JLC-Tech LLC*, 2021 WL 4443637, at *6 (S.D.N.Y. Sept. 28, 2021) (holding that an assertion of "long term business relationships" is "insufficient to support general personal jurisdiction."); *Al -Ahmed v. Twitter, Inc.*, 553 F. Supp. 3d 118, 125 (S.D.N.Y. 2021) ("simply having a large office and a substantial number of employees in a forum is not enough to establish general jurisdiction."). Accordingly, the Court lacks general personal jurisdiction over the Marron Firm.

### C.  The Court Lacks Specific Personal Jurisdiction

Canova fails to allege that the Court has specific personal jurisdiction over the Marron Firm pursuant to CPLR. § 302 and instead solely relies on CPLR. § 301. Compl., ¶ 6. Nonetheless, this Court lacks specific personal jurisdiction under CPLR.§ 302. "Under [CPLR] § 302(a)(1), a court in New York may exercise personal jurisdiction over a non-domiciliary if (1) defendant 'transacts any business within the state'; and (2) the 'cause of action aris[es] from' that business transaction." *Grand v. Schwarz*, 2016 WL 2733133, at *3 (S.D.N.Y. May 10, 2016); *see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). "A claim arises from a particular transaction 'when there is some articulable nexus between the business transacted and the cause of action sued upon.'" *Zurich Am. Life Ins. Co. v. Nagel*, 571 F. Supp. 3d 168, 176 (S.D.N.Y. 2021) (quoting *Sole Resort*, 450 F.3d at 103). "There must be 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former.'" *Id*. (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168-69 (2d Cir. 2013)).

"To determine whether a party in a contract action has 'transacted business' within the meaning of Section 302(a)(1), courts consider, among other things, the following factors:

> (1) whether the defendant has an on-going contractual relationship with a New York entity; (2) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (3) whether the contract is to be performed in New York; (4) whether the contract requires notices and payments to be sent to New York; and (5) whether the contract contains a New York choice of law clause."

*C.B.C. Wood Prod., Inc. v. LMD Integrated Logistics Servs., Inc.*, 455 F. Supp. 2d 218, 224 (E.D.N.Y. 2006). "No single factor is dispositive. Rather, a finding of personal jurisdiction must

be based upon the totality of the circumstances." *Id*. (citing *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)).

Here, none of the above factors support a finding of specific personal jurisdiction over the Marron Firm.

### 1. The Marron Firm Does Not Have an Ongoing Contractual Relationship with Canova

First, the Marron Firm does not have an ongoing contractual relationship with Canova. The fee split agreement concerning the *Jackson* Litigation is the only agreement that the Marron Firm has ever entered into with Canova. Marron Decl., ¶ 8. Indeed, the Agreement itself states that "[t]he Parties agree that this Agreement only relates to and governs the Lang Litigation." Marron Decl., ¶ 7 & Ex. 3 [Agreement at ¶ 6]. This factor supports a finding that specific personal jurisdiction does not exist. *See Fernando v. Fernando*, 2010 WL 3119729, at *7 (E.D.N.Y. Aug. 05, 2010) (oral contract where plaintiff agreed to pay $19,350 in exchange for the defendant arranging for immigration documents and benefits for the plaintiff's son constituted a one-time agreement and not an on-going contractual relationship); *Mortg. Funding Corp. v. Boyer Lake Pointe, LC*, 379 F.Supp.2d 282, 287 (E.D.N.Y.2005) (finding that an alleged oral contract to serve as the broker on a mortgage refinancing did not establish an ongoing contractual relationship).

### 2. The Agreement Was Not Negotiated In New York

Second, the Agreement was not negotiated in New York. Instead, the Agreement was negotiated with Canova via email exchanges. Marron Decl., ¶ 8. "[C]ourts seem generally loath to uphold jurisdiction under the 'transaction in New York' prong of CPLR 302 if the contract at issue was negotiated solely by mail, telephone, and fax without any New York presence by the defendant." *Wego Chem. & Min. Corp. v. Magnablend Inc.*, 945 F. Supp. 2d 377, 383–84

(E.D.N.Y. 2013) (quoting *Worldwide Futgol Assoc., Inc. v. Event Entm't., Inc.*, 983 F.Supp. 173, 177 (E.D.N.Y.1997)). Nobody from the Marron Firm has ever traveled to New York for purposes of meeting with Canova regarding the contractual relationship and the Marron Firm did not sign the Agreement in New York. Marron Decl., ¶ 8.

### 3.   The Agreement Was Not to Be Performed in New York

Third, the Agreement was not to be performed in New York. This is a "significant factor in evaluating the 'transaction of business' requirement." *Lear v. Royal Caribbean Cruises Ltd.*, 2021 WL 1299489, at *8 (S.D.N.Y. Apr. 7, 2021) (citing *Lehigh Valley Indus., Inc. v. Birenhaum*, 527 F.2d 87, 91 (2d Cir. 1975) (holding that the fact that the contract was to be performed in another state was "of great[ ] significance"); *Navaera Sci., LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 376 (S.D.N.Y. 2009) (finding fact that "the agreement was performed outside of New York is of 'great[ ] significance'")). Here, it cannot be disputed that the Agreement was to be performed in California. The Agreement concerns the joint prosecution of the *Jackson* Litigation that was pending in the California Superior Court for the County of San Diego. Marron Decl., ¶ 7 & Ex. 3. "The fact that the contract was to be performed entirely outside New York weighs heavily against the exercise of personal jurisdiction." *Lear*, 2021 WL 1299489, at *8.

### 4.   No Notices or Payments Were Required to be Sent to New York

Fourth, the Agreement does not require any notices or payments to be sent to New York. Marron Decl., ¶ 7 & Ex. 3. Although the Agreement (which Canova breached) provided for the division of attorneys' fees in the *Jackson* Litigation, there is no provision stating that the Marron Firm would pay attorneys' fees to Canova directly. Instead, the Agreement provides that "[t]he Parties agree to support THE MARRON LAW FIRM and THE CANOVA LAW FIRM in an application to the court seeking to have them appointed as Interim Class and/or Class Counsel"

Marron Decl., ¶ 7 & Ex. 3 [Agreement at ¶ 3]. Despite this provision, Canova failed to appear as counsel in the *Jackson* Litigation and failed to submit any time records to the *Jackson* court supporting a request for attorneys' fees. For this reason, no fees were ever awarded to Canova. Had Canova been awarded fees, then payment would have been submitted by the class action administrator directly to Canova— not the Marron Firm. *See* Compl., ¶ 17 (alleging that the class action administrator distributed the attorneys' fees in accordance with the *Jackson* final approval order).

**5.     The Agreement Does Not Contain a New York Choice of Law Clause**

Lastly, the Agreement does not contain a New York choice of law clause. Instead, the Agreement states that it "is to be interpreted based on the laws of the state of California." Marron Decl., ¶ 7 & Ex. 3 [Agreement at ¶ 19]. Accordingly, each of the above factors weigh heavily in favor of the Marron Firm and this Court should dismiss this action based on lack of personal jurisdiction.

## IV.     THE COURT SHOULD DISMISS THIS ACTION BECAUSE VENUE IS IMPROPER

### A.  Rule 12(b)(3) Legal Standard

Federal Rule of Civil Procedure 12(b)(3) provides that a defendant may file a motion to dismiss based on "improper venue." Fed. R. Civ. P. 12(b)(3). In accordance with 28 U.S.C. § 1391(b), "a civil action may be brought in— (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any

defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

### B.  The Southern District of New York Is Not a Proper Venue for this Action

Here, the United States District Court for the Southern District of New York in not a proper venue for this action. First, the Marron Firm does not "reside" in the Southern District of New York. *See* 28 U.S.C. § 1391(b)(1). A corporate defendant, like the Marron Firm, is deemed to "reside" in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]" 28 U.S.C. § 1391(c)(2); *see also Caliko, SA v. Finn & Emma, LLC*, 2022 WL 596072, at *2 (S.D.N.Y. Feb. 28, 2022) ("Because residency for purposes of venue is defined in terms of personal jurisdiction….the inquiry under this subsection collapses into a personal jurisdiction analysis."). As discussed in Section III above, the Court lacks personal jurisdiction over the Marron Firm. Accordingly, the Marron Firm does not "reside" in the Southern District of New York. Instead, the Marron Firm "resides" in San Diego, California. Compl., ¶ 4.

Second, "a substantial part of the events or omissions giving rise to the claim" did not occur in the Southern District of New York. *See* 28 U.S.C. § 1391(b)(2). "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Doe v. McAdam Fin. Grp. LLC*, 2022 WL 3579700, at *9 (S.D.N.Y. Aug. 3, 2022) (quoting *Daniel v. Am. Bd. of Emergency Medicine*, 428 F.3d 408, 432-33 (2d Cir. 2005)). "'[W]hen a plaintiff relies on [§] 1391(b)(2) to defeat a venue challenge,' a district court must engage in a two-step inquiry: first, the court must 'identify the nature of the claims and the alleged acts or omissions giving rise to the claims'; and second, the

court must 'determine whether a substantial part of the acts or omissions occurred in the district where the suit was filed.'" *Lehrer v. J&M Monitoring, Inc.*, 2022 WL 2392441, at \*7 (S.D.N.Y. July 1, 2022) (quoting *Fedele v. Harris*, 18 F. Supp. 3d 309, 316 (E.D.N.Y. 2014)). Here, this action concerns the alleged breach of a fee sharing agreement that was entered into for purposes of jointly prosecuting the *Jackson* Litigation in California Superior Court for the County of San Diego. *See generally* Compl. A substantial part of the acts or omissions in this case clearly occurred in California— not the Southern District of New York.

Lastly, 28 U.S.C. § 1391(b)(3) does not apply here because there is another judicial district where this action "may otherwise be brought." 28 U.S.C. § 1391(b)(3). The Marron Firm resides in the United States District Court for the Southern District of California and a substantial part of the alleged acts or omissions occurred in the United States District Court for the Southern District of California. Accordingly, the Court should dismiss this action because venue is improper.

## V.     ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS ACTION TO THE SOUTHERN DISTRICT OF CALIFORNIA

### A.  28 U.S.C. § 1404(a) Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

"In deciding a motion to transfer venue under § 1404(a), courts must first inquire 'whether the action could have been brought originally in the transferee forum.'" *Sec. & Exch. Comm'n v. Am. Renal Assoc. Holdings*, 2022 WL 1166087, at \*2 (S.D.N.Y. Apr. 20, 2022) (quoting *Siegel v. Ford*, 2017 WL 4119654, at \*7 (S.D.N.Y. Sept. 15, 2017) and *Berger v. Cushman & Wakefield of Penn., Inc.*, 2013 WL 456256, at \*3 (S.D.N.Y. Aug. 28, 2013)). "The second inquiry is 'whether

transfer would be an appropriate exercise of the Court's discretion.'" *Id.* (quoting *Robertson v. Cartinhour*, 2011 WL 5175597, at *3 (S.D.N.Y. Oct. 28, 2011)).

Additionally, transfer is appropriate under 28 U.S.C. § 1404(a) when the parties have entered into a valid forum selection agreement. *See Todorovic v. Liquid Labs, Inc.*, 2018 WL 2209506, at *1 (S.D.N.Y. May 14, 2018) ("The mechanism by which to enforce forum-selection clauses is the venue-transfer provision in 28 U.S.C. § 1404(a)") (citing *Atl. Marine Const. Co.*, 571 U.S. at 59–60). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* (citation omitted).

## B. Transfer Is Appropriate Because the Court Lacks Personal Jurisdiction and Venue Is Improper

As discussed in Sections III and IV above, this Court lacks personal jurisdiction and venue is improper. Accordingly, the Marron Firm respectfully requests that the Court dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). Alternatively, the Marron Firm requests that the Court transfer venue to the United States District Court for the Southern District of California. This action "might have been brought" in the Southern District of California. 28 U.S.C. § 1404(a). The Marron Firm is subject to personal jurisdiction in the Southern District of California because that is where it maintains its headquarters and principal place of business. Compl., ¶ 4. Moreover, venue is proper in the Southern District of California because that is where the Marron Firm resides and where a substantial part of the events or omissions giving rise to the claim occurred. *See* 28 U.S.C. § 1391(b).

Courts in this district have held that "reaching a venue motion in lieu of first addressing personal jurisdiction is sensible where the question of whether there is personal jurisdiction over a defendant is close and likely to yield further litigation." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 741 (S.D.N.Y. 2013) (citing *Cavit Cantina Viticoltori Consorzio Cantine Sociali Del Trentino Societa' Cooperativa v. Browman Fam. Vineyards, Inc.*, 656 F. Supp. 2d 421, 424 (S.D.N.Y. 2009)). Courts also have "the power to transfer the case even if there is no personal jurisdiction over the defendants, and whether or not venue is proper in this district, if a transfer would be in the interest of justice." *Volk Corp. v. Art-Pak Clip Art Serv.*, 432 F. Supp. 1179, 1181 (S.D.N.Y. 1977). If the Court is not inclined to resolve the issues of personal jurisdiction and venue, then it may simply transfer this action to the United States District Court for the Southern District of California.

## C.  The Parties' Forum Selection Agreement Requires Transfer

Transfer is also appropriate because the Parties have entered into a valid forum selection agreement. Specifically, the Agreement between the Parties contains an arbitration provision with a forum selection clause:

> Any dispute or controversy to enforce or interpret any term or provision of this Agreement or to recover any sum due pursuant to this Agreement shall be subject to binding, non-appealable, arbitration to be conducted with Judicial Arbitration Mediation Services ("JAMS"). ***Arbitration shall be brought and conducted in San Diego, California***. Such arbitration shall be the sole remedy to resolve disputes regarding the interpretation or enforcement of any term or provision of this Agreement or to recover any sum due pursuant to this Agreement. Each Party shall bear their own costs and attorneys' fees and expressly waives any right to seek or obtain punitive or any form of exemplary damages from the other party.

Marron Decl., ¶ 7 & Ex. 3 [Agreement at ¶ 16] (emphasis added).

Although the forum selection clause is part of an arbitration agreement, transfer to the United States District Court for the Southern District of California is appropriate at this time. The

Southern District of California (located in San Diego) is the proper forum to decide whether arbitration should be compelled. *See Martinez v. Capstone Rest. Grp., LLC*, 2021 WL 1723776, at *3 (D. Colo. Mar. 31, 2021) ("Because the arbitration agreement designates the Northern District of Georgia as the proper forum, only a court in that district may compel arbitration."); *Ansari v. Qwest Comm'ns Corp.*, 414 F.3d 1214, 1219–20 (10th Cir. 2005) (stating that "a district court lacks authority to compel arbitration in other districts, or in its own district if another has been specified for arbitration"); *see also Sky Cable, LLC v. Coley*, 2012 WL 1016112, at *6 (W.D. Va. Mar. 23, 2012) (recognizing a split in authority as to "whether a federal district court may compel arbitration when the challenged arbitration agreement states that the arbitration itself shall occur in another district" and noting that "a majority of courts" hold that "'a district court lacks authority to compel arbitration in other districts, or in its own district, if another [district] has been specified for arbitration.'") (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 328 (7th Cir. 1995)).[3]

Here, the Parties' forum selection clause is valid and requires transfer to the Southern District of California. "To determine whether a forum selection clause is enforceable, courts engage in a three-part inquiry: (1) whether the clause was reasonably communicated to the party resisting enforcement, (2) whether the clause is mandatory or permissive, and (3) whether the claims and parties involved in the suit are subject to the forum selection clause." *Kraljevich v. Courser Athletics, Inc.*, 2022 WL 3597760, at *7 (S.D.N.Y. Aug. 23, 2022) (citing *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 721 (2d Cir. 2013)). "If these three requirements are met then the forum-selection clause is presumptively enforceable, and the party resisting enforcement of the clause may rebut that presumption 'by making a sufficiently strong showing

---

[3] In light of these authorities, the Marron Firm is not moving to compel arbitration at this time.

that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.*

Each of the above criteria is satisfied. First, it cannot be disputed that the forum selection clause was reasonably communicated. Canova— "a seasoned attorney with considerable experience, including as a partner at leading 'AmLaw 100' law firms"[4]— undoubtedly negotiated, reviewed, and signed the Agreement. Marron Decl., ¶ 7 & Ex. 3. Second, the forum selection clause is mandatory and not permissive: "Arbitration ***shall be*** brought and conducted in San Diego, California." Marron Decl., ¶ 7 & Ex. 3 [Agreement at ¶ 16] (emphasis added). Lastly, the Parties and claims are subject to the forum selection clause. Canova brings this action to recover attorneys' fees allegedly owned pursuant to the Agreement. The arbitration and forum selection clause specifically states that it applies to "[a]ny dispute or controversy to enforce or interpret any term or provision of this Agreement ***or to recover any sum due pursuant to this Agreement***." Marron Decl., ¶ 7 & Ex. 3 [Agreement at ¶ 16] (emphasis added). Therefore, the forum selection clause is presumptively enforceable and Canova cannot show that "extraordinary circumstances" exist to deny transfer. *See Todorovic*, 2018 WL 2209506, at *1.

## VI.    THE COMPLAINT FAILS TO STATE A CLAIM AS A MATTER OF LAW

### A.  Rule 12(b)(6) Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads facts that would allow "the reasonable

---

[4] *See* http://www.canovalaw.com/

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The Court must accept as true all well-pleaded factual allegations in the complaint, and 'draw [ ] all inferences in the plaintiff's favor.' " *Goonan v. Fed. Rsrv. Bank of N.Y.*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013). However, "a complaint is properly dismissed where, as a matter of law, 'the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief.'" *Harris v. TD Ameritrade Clearing Inc.*, 2022 WL 3544171, at *3 (S.D.N.Y. Aug. 18, 2022) (quoting *Twombly*, 550 U.S. at 558).

In deciding a motion to dismiss under Rule 12(b)(6), the court's "consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated into the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). The court may also consider the full text of documents that are cited in, incorporated by reference in, or "integral" to the complaint. *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 809 (2d Cir. 1996).

### B. Canova's Failure to Disclose the Fee Split Agreement to the *Jackson* Court Bars His Claims

If the Court is inclined to reach the merits of this action, then it should find that Canova's claims fail as a matter of law. Here, the Agreement between the Parties "is to be interpreted based on the laws of the state of California." Marron Decl., ¶ 7 & Ex. 3 [Agreement at ¶ 19]. California law requires attorneys to disclose the terms of a fee split agreement to a California Superior Court when making an application for attorneys' fees in connection with a class action settlement. *See* California Rules of Court, Rule 3.769(b) ("Any agreement, express or implied, that has been entered into with respect to the payment of attorney's fees or the submission of an application for

the approval of attorney's fees must be set forth in full in any application for approval of the dismissal or settlement of an action that has been certified as a class action."). The purpose of this rule is to "protect class members from a potential conflict of interest with their attorneys." *Mark v. Spencer*, 166 Cal. App. 4th 219, 228 (2008).

In *Mark v. Spencer*, the California Court of Appeal held that "the parties' failure to fully disclose the fee-splitting agreement to the [court] when they petitioned for approval of the class action settlement bars later enforcement of the agreement." *Mark*, 166 Cal. App. 4th at 228. Here, Canova plainly failed to disclose the terms of the fee split agreement to the *Jackson* court. Marron Decl., ¶¶ 14-15 & Exs. 8-9.[5] Canova also cannot argue that he was unaware of California Rule of Court 3.769(b) because "[c]ourts do not excuse nonlawyers for their ignorance of the law [and] [w]e see no reason to carve out an exception for attorneys." *Mark*, 166 Cal. App. 4th at 229. In *Mark*, the court also recognized that the defendant "may have benefited from" a violation of Rule 3.769(b). *Id*. However, the court was "not persuaded" to protect the plaintiff's "interest in the fee-splitting agreement at the potential expense of [the] class members." *Id*. In accordance with *Mark*, this Court should dismiss each of Canova's claims with prejudice.

### C. Canova's Claims Are Barred by *Res Judicata*

Additionally, Canova's claims are barred by the doctrine of *res judicata*. As explained in the *Mark* case, "courts may not rely solely on a fee distribution agreement to allocate fees between class counsel. Instead, 'an award of attorney fees in class action litigation must be tied to counsel's actual efforts to benefit the class.'" *Mark*, 166 Cal. App. 4th at 229 (quoting *Rebney v. Wells Fargo Bank*, 220 Cal. App. 3d 1117, 1142 (Ct. App. 1990)).

---

[5] This Court may take judicial notice of filings from the *Jackson* Litigation when deciding the present motion to dismiss. *See Pelosi v. Spota*, 607 F. Supp. 2d 366, 371 (E.D.N.Y. 2009) (collecting authority).

Here, there was no evidence before the *Jackson* court showing that Canova's efforts benefited the class because Canova failed to appear in the *Jackson* Litigation (despite his agreement to do so) and because Canova never submitted any time records for the *Jackson* court's consideration of attorneys' fees. Marron Decl., ¶ 14 & Ex. 8. Like in *Mark*, Canova had a "fair opportunity" to "bring the fee-splitting agreement to the court's attention when it considered the attorneys' fee requests", but Canova failed to do so. *Mark*, 166 Cal. App. 4th at 229. Moreover, the "relative entitlement" of Canova and the Marron Firm "to attorney fees was fully considered and finally determined by the court" in the *Jackson* Litigation. *Id.* at 230. The *Jackson* court entered a judgment on the merits regarding the allocation of attorneys' fees. Marron Decl., ¶ 16 & Ex. 10. The *Jackson* court allocated $435,289.80 in attorneys' fees to the Marron Firm and no fees were allocated to Canova. Marron Decl., ¶ 16 & Ex. 10 [Final Approval Order at ¶ 11]. Accordingly, this court should conclude that the doctrine of res judicata bars Canova's claims. *Id.*

### D. Canova's Unjust Enrichment and Quantum Merit Claims Fail Because Canova Alleges that an Express Contract Exists

Courts in California have held that "there is no cause of action in California for unjust enrichment." *Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1307 (S.D. Cal. 2009). "California law entitles a party to the equitable remedy of unjust enrichment only as restitution for an underlying claim, and not as an independent cause of action." *Connecticut Gen. Life Ins. Co. v. Earl Scheib, Inc.*, 2012 WL 12868358, at *5 (S.D. Cal. May 22, 2012). Even if unjust enrichment were a valid cause of action, Canova's claim fails because he alleges that a valid written contract exists. "Indeed, 'unjust enrichment is an action in quasi-contract[, which] cannot lie where a valid express contract covering the same subject matter exists between the parties.'" *Tait v. BSH Home Appliances Corp.*, 2011 WL 1832941, at *6 (C.D. Cal. May 12, 2011) (collecting authority); *Meyer*

*v. Aabaco Small Bus., LLC*, 2018 WL 306688, at *5 (N.D. Cal. Jan. 5, 2018) ("Defendants contend that the unjust enrichment claim fails as a matter of law because an enforceable written contract exists between the parties. The Court agrees.").

For this same reason, Canova's quantum meruit claim also fails. *See DPR Constr. v. Shire Regenerative Med., Inc.*, 204 F. Supp. 3d 1118, 1131 (S.D. Cal. 2016) ("Plaintiff's quantum meruit claim fails because the parties' Contract sets forth terms governing the subject matter for which Plaintiff now seeks equitable recovery."); *Los Angeles Turf Club, Inc. v. Cushion Track Footing USA, LLC*, 2009 WL 10670623, at *3 (C.D. Cal. Feb. 11, 2009) ("As the services at issue were covered by an express contract, recovery under the legal theory of quantum meruit is not available[.]"). Accordingly, Canova's claims for unjust enrichment and quantum meruit should be dismissed with prejudice.

### E.  Canova's Conversion Claim Is Barred by the Economic Loss Doctrine

A conversion claim sounds in tort. *See Textainer Equip. Mgmt. (U.S.) Ltd. v. TRS Inc.*, 2007 WL 1795695, *3 (N.D.Cal.2007). However, "the economic loss rule bars recovery in tort for economic damages arising out of matters governed by contract." *O'M & Assocs., LLC v. Ozanne*, 2011 WL 4433645, at *3 (S.D. Cal. Sept. 21, 2011). "Restrictions on contract remedies serve to protect the 'freedom to bargain over special risks and [to] promote contract formation by limiting liability to the value of the promise.'" *Erlich v. Menezes*, 21 Cal. 4th 543, 553 (1999). "The rule 'prevents the law of contract and the law of tort from dissolving one into the other.'" *LMNO Cable Grp., Inc. v. Discovery Commc'ns, LLC*, 2020 WL 10759618, at *7 (C.D. Cal. May 15, 2020) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004)).

As discussed above, Canova alleges that a valid written contract exists and his claims arise from the alleged breach of that contract. Accordingly, Canova's conversion claim is barred by the

economic loss doctrine. *O'M & Assocs., LLC,* 2011 WL 4433645, at *3 ("Plaintiffs cannot recover purely economic losses in tort that they allege are the subject of an express contract."); *Sullivan v. Transamerica Life INS. Co.*, 2021 WL 2000301, at *8 (C.D. Cal. May 17, 2021) ("because plaintiffs' claims arise from Transamerica's alleged breach of the Policies, the economic loss rule confines plaintiffs to recovery in contract."); *SG Blocks, Inc. v. Hola Cmty. Partners*, 521 F. Supp. 3d 881, 893 (C.D. Cal. 2021) ("claims for conversion, misappropriation of trade secrets, and negligence [] are barred by the economic loss rule because each claim seeks relief for the same economic harm resulting from the alleged breach of the Agreement").

### F.  Canova's Claims Are Also Barred by the Statute of Limitations

Under California law, a claim for conversion is subject to a three-year statute of limitations. *B-K Lighting, Inc. v. Fresno Valves & Casting*, 2008 WL 11338299, at *4 (C.D. Cal. Jan. 7, 2008) (citing Cal. Code Civ. Proc. § 338(c)). "[T]he general rule is well established: '[T]he statute of limitations for conversion is triggered by the act of wrongfully taking property.'" *Id.* (quoting *AmerUS Life Ins. Co. v. Bank of America, N.A.*, 143 Cal.App.4th 631, 639 (2006)).

Under California law, a claim for money had and received is subject to a two-year state of limitations. Cal. Code Civ. Proc. § 339(1); *see also Dhaliwal v. Singh*, 2013 WL 2664336, at *7 (E.D. Cal. 2013) (citing *Franck v. J.J. Sugarman-Rudolph Co.*, 40 Cal. 2d 81, 90 (1952)). The statute of limitations for unjust enrichment based on fraud or mistake is three years from its discovery. Cal. Civ. Proc. Code § 338(d); *see also Pedersen v. Greenpoint Mortg. Funding, Inc.*, 900 F. Supp. 2d 1071 (E.D. Cal. 2012) (citing *Federal Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333, 347 (2008)). The statute of limitations for quantum meruit claims is two years. *Maglica v. Maglica* 66 Cal.App.4th 442, 452 (1998).

Here, Canova alleges that the *Jackson* court entered the final approval order and awarded attorneys' fees on December 20, 2018. Compl., ¶ 14. However, Canova filed this action more than three years later on August 21, 2022. *See generally* Compl. Canova's claims for conversion, money had and received, unjust enrichment, and quantum meruit are plainly barred by the statute of limitations and the Court should dismiss the claims with prejudice.

## VII.  <u>CONCLUSION</u>

For the reasons set forth above, the Court should grant the Marron Firm's motion to dismiss or, alternatively, transfer this action to the United States District Court for the Southern District of California.

Respectfully submitted,

Dated: September 19, 2022        */s/ Antonio Vozzolo*

VOZZOLO LLC
Antonio Vozzolo
345 Route 17 South
Upper Saddle River, New Jersey 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com
***Attorneys for Defendant The Law Offices of Ronald A. Marron, APLC***

24